UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

TERRY HOUTHOOFD, et al.,

                    Plaintiffs,                        Case No. 19-11986

v.                                        Honorable Thomas L. Ludington

TUSCOLA COUNTY ROAD COMMISSION,
et. al.,

                    Defendants.

_____/

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR FAILURE TO STATE A CLAIM, DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT, AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

On July 3, 2019, Plaintiffs filed a complaint, motion for an *ex parte* temporary restraining order prohibiting certain road improvement, and a motion seeking a determination that Defendants' were acting in contempt of an earlier order of this court. ECF Nos. 1–3. On July 10, 2019, the motions were denied. ECF No. 5. On August 19, 2019, Plaintiffs filed an amended complaint and a second motion for an *ex parte* temporary restraining order. ECF Nos. 9, 10. Terry and Wendy Houthoofd reside at 6215 Garner Road and their daughter and son-in law, Terra and Aaron Mallais, own property (but do not reside) at 6188 Garner Road, Akron, Michigan. In their amended complaint, Plaintiffs allege that the Tuscola Road Commission and its commissioners violated their federal constitutional rights, specifically the takings clause of the Fifth and Fourteenth Amendment and illegal seizure under the Fourth Amendment, and the takings and seizure clauses of the Michigan state constitution. ECF No. 9. Plaintiffs allege that "Defendants demand for a survey of Plaintiffs' properties before fixing Garner Road and Oakhurst Park Drive corrupts Plaintiffs' title to their properties" and that Defendants illegally entered upon their

property to cut down tree limbs. *Id.* Plaintiffs also seek a declaratory judgment that they hold record title to their property and "fear that unless this Court enters its Declaratory Judgment restoring title to Plaintiffs, Defendants will under color of law, continue to finalize the survey of the intersection corner of Garner Road and Oakhurst Park Drive and 'take' their properties during the road repairs/gravel, causing continued and further irreparable harm." *Id.* Plaintiffs also allege Defendants acted in a grossly negligent manner in failing "to obey all statutes, rules, regulations and applicable laws, to preserve the peace and protect the lawful rights of Plaintiffs." *Id.* Finally, Plaintiffs allege Defendants caused intentional infliction of emotional distress, illegally entered upon Plaintiffs' property, and slandered Plaintiffs' title by demanding that Plaintiffs' property be surveyed. *Id.* The second request for a temporary restraining order was denied. ECF No. 11.

On October 31, 2019, Defendants filed a motion they titled a "motion for partial summary judgment" seeking to dismiss Counts V (IIED), VI (trespass), and VII (slander of title) due to governmental immunity and failure to state a claim. ECF No. 18. The response and reply were timely filed. ECF No. 21, 22. On March 31, 2020, Plaintiffs' filed a motion for partial summary judgment and on May 1, 2020 Defendants' filed a motion for summary judgment. ECF Nos. 28, 32. Responses and replies were timely filed. ECF Nos. 31, 34, 35, 36.

## I.

## A.

Before discussing the facts of the immediate case, a 2000 case needs to be reviewed to furnish historical context to the immediate dispute. In 00-10230 Plaintiffs Terry and Wendy Houthoofd filed a complaint against the Tuscola County Road Commission, Wisner Township, the Michigan Department of Natural Resources, the Michigan Department of Environmental Quality, and multiple individuals. "Plaintiff's complaint [in the earlier case] arises out of an alleged

effort to have a portion of their property turned into a public road so as to allow the public to gain access to some State land." ECF No. 33. Indeed, Plaintiffs include a "Tax Map" as an exhibit in this case which depicts Garner Road terminating near Saginaw Bay of Lake Huron. ECF No. 28-8 (see I.B. for the map). The map also depicts multiple ten foot wide walks to the west of Garner Road, one of which connects with dashed line depicting what is called "Oakhurst Park" on the east edge of the neighborhood. *Id.* Plaintiffs also furnish a map depicting Garner Road as a public highway in the 1920s when the neighborhood was platted. ECF No. 28-2.

Judge Lawson summarized the issues in the former case as follows "The Road Commission argues that Garner Road extended across Parcel A from at least 1934 and for more than ten years thereafter to provide public access to the lakeshore. The key issue in the case, therefore, is whether or not a highway-by-user was established during the critical time period." ECF No. 100. Ultimately, Judge Lawson concluded "The evidence does not conclusively demonstrate that the public use of the road [Gardner Road – extending to Saginaw Bay] was open, notorious, and exclusive from 1935 to 1945. It is true that the defendant has provided the testimony of various individuals that the road was accessed by the public to hunt, swim, and engage in recreational activities. However, there is no evidence that these activities were not done under protest by the property owners at the time, or that the property owners did not grant permission to the public to use the road for limited purposes." ECF No. 100. Accordingly, on June 18, 2003, Judge Lawson denied Defendants' motion for summary judgment.

On February 5, 2004, a consent judgment was entered between Plaintiffs Terry and Wendy Houthoofd and the Tuscola County Road Commission. The judgment defined Plaintiffs Houthoofd's property as

> Commencing at the Northwest corner of the Southwest quarter of the Southwest quarter of Section 1, Town 14 North, Range 7 East; thence East 30 feet, thence S

> 25 ° 39' E, 277.3 feet to a point 150 feet East of the West line of said Section 1, thence S 9 ° 28' E., 364.8 feet, thence West 210 feet to the West line of said Section 1, thence North 610 feet to the beginning. Also, commencing 30 feet East of the Northwest corner of the Southwest quarter of the Southwest quarter of Section 1, Town 14 North, Range 7 East, thence East 173 feet, thence S 23° 19' E, 442 feet to center of ditch bank, thence S 34 ° 02' W, along center of ditch bank 247 feet, thence West 20 feet, thence N 9 ° 28' W, 364.8 feet to a point 150 feet East of West line of section, thence N 25 °39' W, 277.3 feet to point of beginning, being part of Section 1, Township 14 North, Range 7 East, in the Township of Wisner, County of Tuscola and State of Michigan.
> ECF No. 18-2.

The judgment provided that

> Defendants Tuscola County Road Commission and Tuscola County have no rights or authority to use, encroach upon, infringe, access or make claim to a road, roadway, easement, right of use, right-of-way, right of access or make any other claim whatsoever to the above-described property or to expand Garner Road, *as it is presently maintained*, onto Plaintiffs' above-described property in any fashion.
> ECF No. 18-2 (emphasis added).

**B.**

Plaintiffs allege in this case that Defendants Tuscola County Road Commission and its commissioners have violated their federal and state constitutional rights by seeking to expand the width of the curve from Garner Road to Oakhurst Park Road. ECF No. 1. Plaintiffs Mallais own property on the inside of the curve between Garner and Oakhurst Park Road and Defendants Houthoofd own property on the outside of the curve between Garner and Oakhurst Park Road. ECF No. 28-3 at PageID.326; ECF No. 28-8 at PageID.334.

Plaintiffs' undated "tax map" shows a dashed line, presumably indicating a road, called Oakhurst Park that begins at the third most northerly 'walk' of the plat, exiting the plat to the west and meandering south to Allen Road. ECF No. 28-8. The relevant portion of the map is shown below.



Plaintiffs also rely in part on a 1922 Surveyor's Certification of Oak Hurst Park and a 1924 dedication to the public of 10 feet across walks for public use in their original complaint. ECF No. 1 at PageID.26-29. Plaintiffs allege that the width of what is now Oakhurst Park Drive is "still close to the original 10 foot." ECF No. 1 at PageID.29. In an affidavit, Plaintiff Terry Houthoofd averred that

> That the Oak Hurst Park lot dimensions were platted for a reason with the dedicated 10 foot walks. The houses and cottages for the most part are extremely close to each other and to allow the walks to get any wider than they are currently would raise havoc. To allow Defendant Road Commission to take land away from Plaintiff MALLAIS and widen the road toward their house would be unconscionable as it would have the probability of placing the road right up tight, within several feet of their house. Without a doubt that is something the original landowner clearly did not want happening and why the walks were restricted right from the very beginning to that of 10 feet.

> [] That if there was a road established through use, then it would have been (its beginning) from the west end of the 10 foot walk and then continuing in a southern direction until it intersects with Allen Road near the Southwest corner of Oak Hurst Park. However, the 10 foot walk from the west edge of Oak Hurst Park to where it meets the intersection of Garner Road to the east was established by means of a

platted restricted dedication and therefore is not established through the highway
by use statute.
ECF No. 1 at PageID.30.

In their response to Defendants' motion, Plaintiffs included an affidavit from Gerald
Sweetman, an 81 year old resident in Houthoofds' neighborhood, who averred that Oakhurst Park
Drive was a sand road and it was only after the marina's harbor was dredged that local residents
asked the Tuscola County Road Commission, at a date uncertain, to maintain the road. ECF No.
35-2. A different individual who lived in the neighborhood averred that the Tuscola County Road
Commission commenced maintenance of Oakhurst Park Drive in the mid-1980s. ECF No. 35-6.
Plaintiffs also include aerial photographs from the 1940s thru the 1960s and an affidavit of a
Michigan State University GIS analyst. ECF No. 35-7 – 35-12. The analyst concluded that "the
road was not significantly improved since 1963 and is not being maintained as a county road."
ECF No. 35-11 at PageID.581.

On August 2019 Defendants commissioned survey work by Spicer Engineering to
determine how much the curve would need to be widened to furnish snow removal services from
Garner Road to Oakhurst Park Drive. ECF No. 14 at PageID.131-132. The graphic below was
completed by Spicer. The cross-hatching reflects the survey location of the Houthoofd's property
subject to the 2004 consent judgment. Platted lots 115 and 116 are owned by Defendants Mallais.
ECF No. 10 at PageID.85. Mallais may also own plats 104, 105, 87, 88, 102, and 103. ECF No. 1
at PageID.27. The entire map and the series of maps completed by Spicer which depicts the precise
dimensions of the proposed expansion of the curve onto Oakhurst Park Drive can be found at ECF
No. 31-6.



Plaintiffs have not provided a survey reflecting the location of their land. Neither have they disputed the accuracy of Defendants' survey. However, they did provide the following visual depiction of their property.



ECF No. 28-3.

Defendants disagree with Plaintiffs' contention that Oakhurst Park Drive is limited to the 10 feet right of way included in the plat. Defendants argue that when the subdivision was platted in 1924, Garner Road and Allen Road were both depicted as having a 66-foot wide right of way. ECF No. 31 at PageID.389. The 1922 survey certificate/1924 platting map shows the 66' wide right of way. ECF No. 31-2 at PageID.404. They contend that Oakhurst Park Drive was not established when the Plat was dedicated (unlike Garner Road and Allen Road). They allege it was created by user, then assumed by the Road Commission (that is impliedly dedicated to public use for ten years), and then formally accepted by the Road Commission in 1940. ECF No. 31 at PageID.393-394. Defendants cite to "Exhibit B" as evidence, but there is no exhibit B in the attachments. However, ECF No. 31-4 at PageID.416 appears to be the Oakhurst Park neighborhood roads that the Tuscola County Road Commission deemed to be part of their road system in a 1940 resolution, which may be what Defendants are relying upon. That said, there is no key and there is no indication the map is drawn to scale or provides any information to the reader about the length or width of the roads on the map. The number "30" is written on the bend of what is likely Oakhurst Park Drive where it meets up with Allen Road, but there is no explanation of its significance.

The survey furnishes answers to many of the issues raised by the Plaintiffs. First, nearly all of the existing improved portion of Garner Road is contained within the legal description of Plaintiffs Houthoofds' property. ECF No. 31-6 at PageID.424. How that may have occurred is not explained as no title history is furnished for either Houthoofds' property or, for that matter, for Garner Road.  Second, when Oakhurst Park was improved, the "curve" from Garner Road to the west and onto Oakhurst Park completely missed the 10 foot platted walk and fully encroached onto

at least lots 117, 118 and 119 but certainly not on the Mallais' property. Again why that occurred and why the lot owners agreed to the encroachment is not included with the parties materials, but the survey does not corroborate the Mallais' factual assertions. Finally nothing in the detailed survey drawings reflect any proposed improvement to the Garner Road/ Oakhurst Park Drive curve that anticipates straying from the location of the road as it was maintained in 2000.

## II.

In their ECF No. 18 motion, Defendants contend that they "move this Court for partial summary judgment pursuant to Fed. R. Civ. P. 12(B)(6)." ECF No. 18 at PageID.156. However, the standard for a motion for summary judgment is included at FRCP 56(a). A motion for failure to state a claim arises under FRCP 12(b)(6), which has a very different standard. A 12(b)(6) motion "must be made before pleading if a responsive pleading is allowed." FRCP 12(b). Defendants answered the amended complaint on September 12, 2019 and filed the current motion on October 31, 2019. Accordingly, the motion, if it were to be considered a motion to dismiss under 12(b)(6), would be untimely. However, FRCP 12(h)(2)(B) provides that "[f]ailure to state a claim upon which relief can be granted . . . may be raised . . . by a motion under Rule 12(c)." And FRCP 12(c) provides that "[a]fter the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings." Accordingly, Defendants motion, ECF No. 18, which seeks relief due to Plaintiffs' failure to state a claim will be construed as a motion under 12(c).

"The standard of review for a [motion for] judgment on the pleadings [under rule 12(c)] is the same as that for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)." *E.E.O.C. v. J.H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir. 2001). Courts must view the pleadings in the "light most favorable to the nonmoving party, accept the well-pled factual allegations as true, and determine whether the moving party is entitled to judgment as a matter of law." *Commercial*

*Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007). However, the court "need not accept as true legal conclusions or unwarranted factual inferences." *Mixon v. State of Ohio*, 193 F.3d 389, 400 (6th Cir. 1999). A motion for judgment on the pleadings "is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991); s*ee also JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007).

### III.

Michigan law provides that

(1) Except as otherwise provided in this act, a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function. . . .
(2) Except as otherwise provided in this section, and without regard to the discretionary or ministerial nature of the conduct in question, each officer and employee of a governmental agency, each volunteer acting on behalf of a governmental agency, and each member of a board, council, commission, or statutorily created task force of a governmental agency is immune from tort liability for an injury to a person or damage to property caused by the officer, employee, or member while in the course of employment or service or caused by the volunteer while acting on behalf of a governmental agency if all the following are met:
(a) The officer, employee, member or volunteer is acting or reasonably believes he or she is acting within the scope of his or her authority.
(b) The governmental agency is engaged in the exercise or discharge of a governmental function.
(c) The officer's employee's member's, or volunteer's conduct does not amount to gross negligence that is the proximate cause of the injury or damage.
MCL 691.1407.

### i.

To maintain an action against a government agency, a plaintiff must plead in avoidance of immunity. *Mack v. City of Detroit*, 649 N.W.2d 47, 55–56 (Mich. 2002). This is done "by stating a claim that fits within a statutory exception or by pleading facts that demonstrate that the alleged tort occurred during the exercise or discharge of a nongovernmental or proprietary function." *Id.* at 57. "The presumption is, therefore, that a governmental agency is immune and can only be

subject to suit if a plaintiff's case falls within a statutory exception. As such, it is the responsibility of the party seeking to impose liability on a governmental agency to demonstrate that its case falls within one of the exceptions." *Mack v. City of Detroit*, 649 N.W.2d 47, 55–56.

The Michigan Supreme Court also explained that "All governmental agencies (state and local) are immune from tort liability for injuries arising out of the exercise or discharge of a non-proprietary, governmental function. 'Governmental function' is defined as any activity which is expressly or impliedly mandated or authorized by constitution, statute, or other law." *Ross v. Consumers Power Co.*, 363 N.W.2d 641, 647, 661 (Mich. 1984).

### ii.

"[G]overnmental employees enjoy qualified immunity for intentional torts. A governmental employee must raise governmental immunity as an affirmative defense and establish that (1) the employee's challenged acts were undertaken during the course of employment and that the employee was acting, or reasonably believed he was acting, within the scope of his authority, (2) the acts were undertaken in good faith, and (3) the acts were discretionary, rather than ministerial, in nature." *Odom v. Wayne County*, 760 N.W.2d 217, 218 (Mich. 2008); *Ross*, 363 N.W.2d at 667–68. Only intentional torts that existed in 1986 are covered by the tort immunity act for individual employees. *See Odom*, 760 N.W.2d at 228; MCL 691.1407(3).

"[A] lack of good faith [is defined] as 'malicious intent, capricious action or corrupt conduct' or 'willful and corrupt misconduct.'" *Odom*, 760 N.W.2d at 225 (internal footnotes and citations omitted). "[W]illful and wanton misconduct is made out only if the conduct alleged shows an intent to harm or, if not that, such indifference to whether harm will result as to be the equivalent of a willingness that it does." *Id.*

A discretionary act "require[s] personal deliberation, decision and judgment." *Ross*, 363 N.W.2d at 668. The Michigan Supreme Court explained that a discretionary act "involves significant decision-making, while [ministerial acts] involve[] the execution of a decision and might entail some minor decision-making." *Id.* "Many individuals are given some measure of discretionary authority in order to perform their duties effectively. Therefore, to determine the existence and scope of the individual's immunity from tort liability in a particular situation, the specific acts complained of, rather than the general nature of the activity, must be examined." *Id.* "[I]mmunity extended to individuals is far less than that afforded governmental agencies." *Id.*

### iii.

Plaintiff alleges three intentional torts – IIED, trespass, and slander of title. There are four elements to a prima facie case for intentional infliction of emotional distress ("IIED") under Michigan law: "(1) the defendant's extreme and outrageous conduct, (2) the defendant's intent or recklessness, (3) causation, and (4) the severe emotional distress of the plaintiff." *Lucas v. Awaad,* 830 N.W.2d 141, 150 (Mich. Ct. App. 2013). "Liability for the intentional infliction of emotional distress has been found only where the conduct complained of has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Lucas*, 830 N.W.2d at 150 (quoting *Doe v. Mills*, 536 N.W.2d 824, 833 (Mich. Ct. App. 1995)). Evidence of "mere insults, indignities, threats, annoyances, petty oppressions, and other trivialities" is insufficient to establish IIED liability. *Doe*, 536 N.W.2d at 833.

Common law trespass is "any unauthorized intrusion or invasion of the private premises or lands of another." *Fruman v. City of Detroit*, 1 F. Supp. 2d 665, 675 (E.D. Mich. 1998). The intrusion must be intentional. *Terlecki v. Stewart*, 278 Mich. App. 644, 654 (2008).

The elements of a slander of title claim are (1) a false statement of the defendant affecting the plaintiff's right to the property, (2) malice, and (3) special damages. *B&B Investment Group v. Gitler*, 581 N.W.2d 17, 20 (Mich. Ct. App. 1998); MCL § 565.108.

## IV.

### A.

#### i.

Defendants argue that the Road Commission has immunity for the IIED claim "because it was engaged in a governmental function and none of the exceptions to governmental immunity apply [and t]he individual Defendants have immunity pursuant to *Odom*." ECF No. 18 at PageID.166-167. Defendants also argue that "[t]here are simply no facts alleged which would support Plaintiffs' claim for intentional infliction of emotional distress in light of governmental immunity." *Id.*

Plaintiffs respond by explaining some of the case law addressing governmental immunity and arguing that the illegal taking and seizure of their property under federal and state constitutional law caused Plaintiffs to suffer intentional infliction of emotional distress. ECF No. 21 at PageID.244-245. Plaintiffs also explain that "Defendants acted knowingly, willfully, intentionally, and with reckless disregard and deliberate indifference to Plaintiffs' constitutional rights, and purposefully interfered with Plaintiffs' property rights. That the aforementioned reckless and other conduct on the part of the Defendants was arbitrary and capricious in violation of Plaintiffs' substantive due process rights under the 14th Amendment." *Id.* The alleged malice stems from how Defendants "allow the one neighbor to place permanent posts in their yard along the Drive" but not Plaintiffs. *Id.* at PageID.247. Also, "Defendants caused the snow this past winter of 2019 to be plowed and cleaned out next to the neighbors' mailboxes to such an excellent degree

there was no need for them to shovel" but then left snow within 5 feet of Plaintiffs' mailboxes. *Id.* Plaintiffs also explain that "Plaintiff Terry Houthoofd has an incurable muscle disease that causes him excruciating pain and severe emotional distress when he is placed under stress. Unfortunately, he has had to suffer and endure excruciating pain and severe distress, due to Defendants' afore-stated actions." ECF No. 21 at PageID.251.

As for individual defendants, Plaintiffs argue their actions were ministerial and not discretionary, thereby eliminating any possible governmental immunity. ECF No. 21 at PageID.251. In the alternative, Plaintiffs argue even if the acts are discretionary, "acts of an intentional nature intended to create emotional distress and/or trespass or slander title are outside the scope of duty and are therefore **not** discretionary acts." *Id.* (emphasis in original).

### ii.

First, Defendant Tuscola County Road Commission is a governmental entity entitled to governmental tort immunity for IIED under MCL 691.1407(1). Plaintiffs have failed to plead any exceptions to tort immunity. Accordingly, Count V will be dismissed as against Tuscola County Road Commission.

As for the individual defendants, Plaintiffs' amended complaint simply alleges that "[t]he conduct of Defendants caused Plaintiffs severe emotional distress and mental anguish. [] As a direct and proximate result of Defendants' action, Plaintiffs have suffered pain, humiliation, embarrassment, emotional and psychological distress, anxiety and anguish." ECF No. 9 at PageID.80. Plaintiffs also incorporate earlier stated facts by reference. *Id.* However, the amended complaint does not allege any conduct by the individual defendants to intentionally cause a Plaintiff emotional distress. The complaint provides that "Defendants Jack Laurie, Gary Parsell, David Kennard, Julie Matuszak, and Duane Weber are Tuscola County Road Commissioners . . .

[and] may hereinafter also be referred to as 'Defendant Road Commission." ECF No. 9 at PageID.67. However, fellow defendant Tuscola County Road Commission, is also referred to as "Defendant Road Commission." *Id.* Therefore, when Plaintiffs allege that "Defendant Road Commission" committed various acts such as harassing Plaintiffs and tearing up their grass with graders, none of the individual defendants are identified by name. "Detailed factual allegations" are not required to survive a motion for failure to state a claim. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). However, the pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" and "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678–79 (quotations and citation omitted). The only reference to an individual road commissioner is an allegation that Terry Houthoofd visited Jack Laurie's "home in an attempt to resolve the situation" and that Jack Laurie has yet to return a phone call to Terry Houthoofd. ECF No. 9 at PageID.75. The failure to return a phone call is not a sufficient predicate for an IIED claim. Therefore, Plaintiffs have failed to state a claim for IIED against the individual defendants and accordingly, the Count V will be dismissed against Jack Laurie, Gary Parsell, David Kennard, Julie Matuszak, and Duane Weber.

**B.**

**i.**

Next Defendants argue that trespass is an intentional tort and therefore the road commission is entitled to governmental immunity. ECF No. 18 at 167. Defendants also argue Plaintiffs fail to make a claim that the individual defendants trespassed upon their property. *Id.*

Plaintiffs respond that Defendants "are charged with the jurisdiction over the public roads in Wisner Township and Tuscola County and knew or should have known that Oakhurst Park

Drive was a platted and dedicated 10 foot road within the boundaries of Oak Hurst Park subdivision." ECF No. 21 at PageID.248. Plaintiffs also argue that "Defendants have either entered upon or caused someone to commit trespass upon the Plaintiffs' properties." *Id.* at PageID.251.

**ii.**

First, Defendant Tuscola County Road Commission is a governmental entity entitled to governmental tort immunity for trespass under MCL 691.1407(1). Plaintiffs have not pled any exceptions to tort immunity. Accordingly, Count VI will be dismissed as against Tuscola County Road Commission.

Second, as for individual Defendants, Plaintiffs' amended complaint does not allege that any individual defendants trespassed upon their property. As stated earlier, except for one unreturned phone call by Jack Laurie, there are no references to acts committed by specific individual defendants in the amended complaint. Plaintiffs' allegations of their yard being torn up by graders and employees being sent to harass Plaintiffs are only alleged to have been accomplished by "Defendant Road Commission." There are insufficient facts alleged to state a claim for the individual defendants' trespass on Plaintiffs' property. Accordingly, Count VI will be dismissed as against Jack Laurie, Gary Parsell, David Kennard, Julie Matuszak, and Duane Weber.

**C.**

**i.**

Lastly, Defendants argue that slander on title is an intentional tort and therefore the road commission is entitled to governmental immunity. ECF No. 18 at PageID.167. Defendants also argue that the complaint "fails to identify a specific individual defendant whose individual conduct is allegedly responsible for the slander on title." ECF No. 18 at PageID.167-168.

Plaintiffs contend that Defendants "knew when ordering Plaintiffs Mallais not to put a fence, posts, and/or rocks on their property, and to remove the rocks that were already on the property abutting the Drive, that they were violating Plaintiffs' constitutional rights, conducting acts in violation of MCL 247.190, and additionally affecting plaintiffs' titles." ECF No. 21 at PageID.248. Plaintiffs also argue that "Defendants have subjected the Plaintiffs to constant attempts to take their properties, intruded upon their properties, exerted control over their properties, all in violation of their State and Federal Constitutional rights. They have done so to Plaintiffs Mallais for over five (5) years and to Plaintiffs Houthoofd for approximately the last twenty (20) years, including forcing them to sue the Defendants twice." *Id.* at PageID.249. "Defendants' demand for Plaintiffs' properties to be surveyed was a declaration to the world that their properties are subject to road right of ways which as to Oakhurst Park Drive is absolutely not true. Plus, Defendants' actions of grading unto both Plaintiffs' properties causing damage indicated to the world that Defendants have claims of road right of way on Plaintiffs' properties abutting Garner Road and Oakhurst Park Drive. As a consequence of Defendants actions, title to Plaintiffs' properties have been slandered." ECF No. 21 at PageID.252.

Plaintiffs also argue that the "acts of implementing their decision were ministerial and as such, does not satisfy the final element of Ross for providing immunity. The individual Defendants participated in making that decision and then were part of implementing its ministerial acts." ECF No. 21 at PageID.252.

### ii.

First, Defendant Tuscola County Road Commission is a governmental entity entitled to governmental tort immunity for slander of title under MCL 691.1407(1). Plaintiffs have failed to

plead any exceptions to tort immunity. Accordingly, Count VII will be dismissed as against Tuscola County Road Commission.

Second, as for individual Defendants, Plaintiffs' amended complaint does not allege what each defendant did to slander the title of Plaintiffs' property. As stated earlier, except for one unreturned phone call by Jack Laurie, there are no references to acts committed by specific individual defendants in the amended complaint. Plaintiffs' allegations of their yard being torn up by graders and employees being sent to harass Plaintiffs are only alleged to have occurred by "Defendant Road Commission." There are insufficient facts alleged to state a claim for the individual defendants' trespass on Plaintiffs' property. Accordingly, Count VII will be dismissed as against Jack Laurie, Gary Parsell, David Kennard, Julie Matuszak, and Duane Weber.

## V.

Both Plaintiffs and Defendants filed motions for summary judgment. A motion for summary judgment should be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of identifying where to look in the record for evidence "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the opposing party who must set out specific facts showing "a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (citation omitted). The Court must view the evidence and draw all reasonable inferences in favor of the non-movant and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

## VI.

FRCP 56(a) provides that "[a] party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought." Plaintiffs spent the entirety of their motion and brief arguing that Garner Road was only platted at 10 feet and asking for the 2004 consent judgment to be enforced on its terms. ECF No. 28. However, they did not articulate any count on which they seek an order of summary judgment, nor did they provide evidence for the declaratory judgment. Even if this Court were to conclude that Garner Road was platted at 10 feet and remains only 10 feet wide today, as argued in their motion, Plaintiffs have not demonstrated how that is relevant to Plaintiffs' claims of illegal takings and seizure, gross negligence, or declaratory judgment. Accordingly, Plaintiffs' motion for partial summary judgment/declaratory judgment will be denied.

## VII.

Defendants' cross motion for summary judgment sought to dismiss the case on all counts. Counts V, VI, and VII have already been dismissed from the 12(c) motion, so only the remaining claims will be addressed below.

### A.

In Count I, Plaintiffs allege Defendants violated the takings clause of the US Constitution under the Fifth and Fourteenth Amendments and illegally seized their property, thereby violating the Fourth Amendment to the US Constitution.

#### i.

The Fourth Amendment provides,

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and

particularly describing the place to be searched, and the persons or things to be seized.

Defendants argue that the Fourth Amendment claim against the U.S. Constitution should be dismissed because "the Fourth Amendment to the United States' Constitution does not apply in any way to Plaintiffs' claim in this case." ECF No. 32 at PageID.445-446. In support, Defendants cite to cases which demonstrate that the Fourth Amendment applies to police investigatory conduct. *Id.* at n.18. Plaintiffs allege that "Defendants demand for a survey of Plaintiffs' properties before fixing Garner Road and Oakhurst Park Drive corrupts Plaintiffs' title to their properties and constitutes . . . an illegal seizure under the 4th Amendments of the Constitution of the United States." ECF No. 9 at PageID.77. Defendants have admitted a survey was conducted by Spicer Group at the request of Tuscola County Road Commission to determine the legal right-of-way of Garner Road and Oakhurst Park Drive. ECF No. 32-5. However, there is no evidence that any search or seizure occurred from Plaintiffs' property during the survey. Additionally, the survey was completed by Defendants and there is no evidence it was completed at Plaintiffs' expense.

Plaintiffs also allege that "Defendants decision to illegally enter upon Plaintiff Houthoofd's property without permission to cut limbs from trees and the actual cutting down of trees under color of law, and interfering with Plaintiff Houthoofd and Plaintiff Mallais' rights to exclusive possession of their properties, constitutes . . . an illegal seizure under the 4th Amendment of the Constitution of the United States." ECF No. 9 at PageID.77. However, as Defendants argue, there is no evidence of any Fourth Amendment violation because there is no evidence of any trees being removed from the property, let alone illegally being removed. The only evidence are pictures from Plaintiffs' complaint, two black and white photos of trees along the edge of a gravel road. ECF No. 1 at PageID.22; ECF No. 34-6 at PageID.541. However, the pictures do not show Defendant Road Commission vehicles, members of the Tuscola County Road Commission, nor any other

identifiers that tree limbs were removed by Defendants. Defendants have demonstrated there is no genuine evidence of a U.S. Constitutional Fourth Amendment violation. Defendants' motion for summary judgment as to the Fourth Amendment claims in Count I will be granted.

**ii.**

The Fifth Amendment to the U.S. Constitution provides that private property shall not "be taken for public use, without just compensation." In *Knick v. Township of Scott, Pennsylvania*, the U.S. Supreme Court held that a plaintiff is not required to seek a remedy in state court for an alleged takings violation before bringing their claim to federal court. 139 S. Ct. 2162, 2167–68 (2019). Therefore, plaintiffs may bring their claims in federal court. The Supreme Court has provided that "a property owner has a claim for a violation of the Takings Clause as soon as a government takes his property for public use without paying for it." *Id.* at 2170. A taking can occur by a "physical occupation/invasion" or through a "regulatory takings." *Kruss* at 700.

In the current case, there is no evidence that Defendants have taken any of Plaintiffs' property. The survey completed by Defendants demonstrates that almost any proposed expansion would not intrude upon Houthoofd's property as described in the 2004 consent judgment. There is one blue line in ECF No. 32-7 at PageID.491 that goes outside the bounds of the current Garner Road and enters upon Houthoofd's property. Therefore, as a result of the 2004 agreement judgment, Defendants may not expand Garner Road beyond the eastern edge of the curve as shown in the green rectangle in the image below.



However, any other proposed expansion from ECF No. 32-7 does not demonstrate that it would interfere with Plaintiffs Houthoofd or Mallais' property. Accordingly, Defendants have shown there is no genuine issue of material fact regarding the takings violation because there is no evidence that Tuscola County Road Commission has physically taken control of Plaintiffs' property or imposed regulations upon the property. It is unclear based upon Plaintiffs' complaint if they also allege a procedural or substantive due process claim connected to the alleged takings clause violation. However, the question is moot because there is no underlying takings violation. Defendants' motion for summary judgment as to Count I for the Takings Clause will be granted.

**B.**

In Count II, Plaintiffs allege Defendants violated the takings clause, Article I, Section 17 of the Michigan Constitution and committed an illegal seizure of their property, thereby violating Article I, Section 11 of the Michigan Constitution.

**i.**

Defendants argue that "the Michigan Constitution's search and seizure provision is inapplicable to the present case." ECF No. 32 at PageID.446. They cite to *People v. Gingrich*, which provides that a

> warrant is only required if the government conducts a search of an object or area that is protected by the Fourth Amendment. The Fourth Amendment itself protects the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures. Under the plain terms of the amendment, when the Government obtains information by physically intruding on persons, houses, papers or effects, a search within the original meaning of the Fourth Amendment has undoubtedly occurred.
>
> *People v. Gingrich*, 862 N.W.2d 432, 435-436 (Mich. Ct. App. 2014) (internal quotations and citations omitted).

Similar to the U.S. Constitution's Fourth Amendment claim, Plaintiffs allege that "[t]he actions of Defendants constitute a 'seizure' of property under Article I, Section II of the Constitution of the State of Michigan." ECF No. 9 at PageID.78. Defendants' alleged behavior of surveying the road and cutting down trees does not constitute a seizure under Michigan law. Defendants have correctly argued that there is no evidence of a seizure occurring as a result of the survey and there is no evidence of Defendants cutting down tree limbs or trees on Plaintiffs' property. Accordingly, Defendants' motion for summary judgment as to a Fourth Amendment violation in Count II will be granted.

**ii.**

Article I, Section 17 of the Michigan State Constitution provides that "No person shall be . . . deprived of life, liberty or property, without due process of law." Article 10, Section 2, provides "Private property shall not be taken for public use without just compensation therefore being first made or secured in a manner prescribed by law." When discussing the takings clause, the Michigan Supreme Court explained that

> [t]he Legislature enacted the [Uniform Condemnation Procedures Act] in 1980 to make uniform the statutes that govern the exercise and procedure of eminent domain. Consistent with the constitutional mandate to award 'just compensation,' the UCPA similarly demands that individuals receive 'just compensation when their property is taken by the government.

*Mich. Department of Transportation v. Tomkins*, 749 N.W.2d 716, 721–22 (Mich. 2008).

In their complaint, Plaintiffs allege that "The actions of the Defendants constitute a 'taking' of property without due process of law under Article I, Section 17 of the Constitution of the State of Michigan." ECF No. 9 at PageID.78. It is unclear from Plaintiffs' complaint whether they are alleging Defendants' violated the takings clause or the substantive due process clause of the Michigan Constitution.

Regardless of whether Plaintiffs intended to allege a substantive due process violation of being deprived of property without due process or a taking of their land without just compensation, their claim fails because there is no evidence that Defendants have taken Plaintiffs' property. As discussed earlier, except for the green rectangle, all proposed expansions of Garner Road to Oakhurst Park Drive are not on Houthoofds' property as designated by the consent decree. Additionally, any proposed expansion of Oakhurst Park Drive in a southern direction does not intersect with Plaintiff Mallais' property on plats 115 and 116 (the two plats of their property that abut Oakhurst Park Drive). *See* ECF No. 32-7. Accordingly, Defendants' motion for summary judgment for Count II as to the Takings Clause or Substantive Due Process clause will be granted.

## C.

In Count III, Plaintiffs seek a "Declaratory Judgment restoring title to Plaintiffs." ECF No. 1 at PageID.12. Plaintiffs Houthoofd allege they "hold record title to their property free from any interests from Defendants, including any road right of way" and Plaintiffs Mallais allege they "hold record title to their property free from any interests from Defendants, including any perceived road

right of way pertaining to Oakhurst Park Drive." ECF No. 9 at PageID.79. Plaintiffs allege that "Defendants by their actions have claimed a road right of way over Plaintiffs' properties and exercised control and dominion over said property depriving Plaintiffs of their properties." *Id.* "Plaintiffs fear that unless this Court enters its Declaratory Judgment restoring title to Plaintiffs, Defendants will under color of law, continue to finalize the survey of the intersection corner of Garner Road and Oakhurst Park Drive and 'take' their properties during the road repairs/gravel, causing continued and further irreparable harm." *Id.*

In their motion for summary judgment, Defendants argue the "extent of Garner Road contemplated in the agreement encompasses more than the area designed for vehicular travel and used by the public. It also necessarily includes, at a minimum, area along both sides of the traveled portioned of the road required to accommodate the Road Commission's statutorily mandated normal and routine maintenance activities on Garner Road." ECF No. 32 at PageID.457. Defendants compare MCL § 224.21(2) ("A county shall keep in reasonable repair, so that they are reasonably safe and convenient for public travel, all county roads, bridges, and culverts that are within the county's jurisdiction, are under its care and control, and are open to public travel") and MCL § 224.11 (provides the process to take private property to expand roads if necessary) as evidence that the duty to maintain a road is different from the authority to expand a road until state law. ECF No. 32 at PageID.457-458. Defendants argue their interpretation is "the only one which preserves the legal integrity of the decree and thereby effectuates the intent of the parties" because Plaintiffs have permitted routine maintenance activities for fifteen years prior to bringing the instant lawsuit. ECF No. 32 at PageID.459.

The consent decree provided that

It is hereby further ordered and adjudged that Defendants Tuscola County Road Commission and Tuscola County have no rights or authority to use, encroach upon,

infringe, access or make claim to a road, roadway, easement, right of use, right-of-way, right of access or make any other claim whatsoever to the above-described property or to expand Garner Road, *as it is presently maintained*, onto Plaintiffs' above-described property in any fashion.
ECF No. 28-4 at PageID.328 (emphasis added).

Because Plaintiffs simply incorporate all prior paragraphs into Count III, it is difficult to determine which actions of Defendants Plaintiffs allege have colored Plaintiffs' title to their property. Regardless, Plaintiffs failed to provide any evidence of their record title to their property or where their property line is located. The only evidence Plaintiffs provided regarding their ownership of the property is the consent decree, which describes part of Houthoofds' property, a drawing indicating the general location of their two properties, and the original platting of the neighborhood which shows where Mallais' property is allegedly located. This is insufficient to establish ownership of the property for a declaratory judgment. Therefore, Defendants have demonstrated that there is no genuine issues of material facts regarding Plaintiffs' claim for declaratory judgment.

## D.

In Count IV, Plaintiffs allege Defendants were grossly negligent. ECF No. 1. The Governmental Tort Liability Act ("GTLA") defines gross negligence as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." MCL § 691.1407(8)(a). It also states that "Except as otherwise provided in this act, a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental agency is engaged in the exercise or discharge of a governmental function." MCL 691.1407(1).

Defendants argue that the Tuscola County Road Commission is a governmental agency and therefore, it is immune from tort liability. Plaintiffs have not demonstrated any exception to

the GTLA. Accordingly, Tuscola County Road Commission's motion for summary judgment as to gross negligence will be granted.

In addition, Defendants argue that "the present Complaint fails to identify any Road Commission employee, allege acts or omissions by a particular employee which Plaintiffs claim were grossly negligent, and provide any factual support for their bald assertion that any Road Commission employee's conduct proximately caused the physical and psychological injuries Plaintiffs assert under Count IV." ECF No. 32 at PageID.461. The only reference to a specific employee, rather than Defendants as a whole, in the Complaint is the allegation that Jack Laurie failed to return Plaintiff Terry Houthoofd's phone call.  ECF No. 9. No evidence of this unreturned phone call has been presented, nor any other evidence demonstrating gross negligence by any individual defendants. Accordingly, Defendants' motion for summary judgment as to Count IV will be granted.

### VIII.

Accordingly, it is **ORDERED** that Defendants' Motion for failure to state a claim, ECF No. 18, is **GRANTED**.

It is further **ORDERED** that Counts V, VI, and VII are **DISMISSED** against Defendants Tuscola County Road Commission, Jack Laurie, Gary Parsell, David Kennard, Julie Matuszak, and Duane Weber.

It is further **ORDERED** that Plaintiffs' Motion for Partial Summary Judgment, ECF No. 28, is **DENIED**.

It is further **ORDERED** that Defendants' Motion for Summary Judgment, ECF No. 32, as to Counts I, II, III, and IV is **GRANTED**.

It is further **ORDERED** that Plaintiffs' amended complaint, ECF No. 9, is **DISMISSED**.


Dated: June 16, 2020                                    s/Thomas L. Ludington
                                                       THOMAS L. LUDINGTON
                                                       United States District Judge